UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSHUA HOWARD,

                Plaintiff,

v.                                Case No. 18-cv-1830-pp

LINDA ALSUM-O'DONOVAN, WILLIAM J. BAUER,
SCOTT COOPER, BRIAN FOSTER,
WARDEN MICHAEL MEISNER, ANTHONY MELI,
WILLIAM J. POLLARD, DONALD STRAHOTA,
MICHAEL THURMER, and JEREMY WESTRA,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

The plaintiff, a state prisoner who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This decision resolves the plaintiff's motion for leave to proceed without prepayment of the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepayment of the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court let an incarcerated plaintiff proceed with his case without prepaying the civil case filing fee if he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay

1

Case 2:18-cv-01830-PP    Filed 07/13/20    Page 1 of 11    Document 9

the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

Previously, the court ordered the plaintiff to pay an initial partial filing fee of $130.53. Dkt. No. 5. The court received that fee on February 1, 2019. The court will grant the plaintiff's motion for leave to proceed without prepayment of the filing fee and will allow him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Plaintiff's Complaint**

   A.     Federal Screening Standard

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain enough facts, accepted as true, that make the complaint "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or laws of the

2

United States and that whoever deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

      B.     The Plaintiff's Allegations

The plaintiff is incarcerated at Green Bay Correctional Institution. Dkt. No. 1 at 1. He alleges that he "has been prescribed medication to treat depression, anxiety, and insomnia since 2004 and he has missed thousands of doses of medication due to the Defendants' continued practice of having correctional officers dispense controlled medication, maintain the logs and order refills." Id. at 2. The plaintiff states that "hundreds of separate instances of abrupt unavailability of medication has caused [him] to experience insomnia, migraine headaches, severe nausea and a complete disruption of his well-being and mental health in addition to an exacerbation of his underlying symptoms of depression, insomnia and anxiety." Id.

The plaintiff alleges that he filed "nearly (100) medication-related complaints and as a result the defendants were all contacted at various times so that they could remedy the problem." Id. at 3. He alleges that the defendants "were aware of the constitutionally-infirm medication system and not having

3

the will to stop using unqualified and ill-trained correctional officers, they simply ignored the plaintiff's repeated requests for help." Id.

The plaintiff states that defendant Alsum, the "BHS Regional Nursing Coordinator," "was formally contacted at least (18) times between 2010 and 2017, as a result of the plaintiff's "28th, 33rd, 35th, 43rd, 45th, 46th, 48th, 49th, 50th, 51st, 52nd, 54th, 56th, 64th, 65th, 66th, 78th and 82nd medication related complaints." Id.

Next, the plaintiff alleges that defendant Bauer "was contacted in his capacity as a Security Captain in 2011, 2012 and 2017 as a result of the plaintiff's 32nd, 35th and 89th medication-related complaints." Id.

The plaintiff alleges that defendant Cooper "was contacted in his capacity as the Deputy Warden at least (3) times between 2015 and 2016 as a result of the plaintiff's 61st, 62nd and 76th medication-related complaints." Id.

The plaintiff also states that defendant Warden Foster "was formally apprised of the medication problem at least (8) times from 2015 to 2017 as a result of the plaintiff's 61st, 66th, 69th, 75th, 76th, 81st, 84th and 85th medication-related complaints." Id.

The plaintiff states that his complaints "followed Defendant Meli as he was promoted over the years." Id. According to the plaintiff, "Meli was first formally contacted in his capacity as a Security Captain in 2011 as a result of the plaintiff's 32nd medication-related complaint." Id. The plaintiff also states that "[f]rom 2012 to 2017, Meli was contacted another (12) times in his capacity as WCI's Security Director as a result of the plaintiff's 33rd, 42nd,

4

52nd, 57th, 58th, 61st, 62nd, 74th, 77th, 78th, 80th and 85th medication-related complaints." Id. at 4.

The plaintiff alleges that defendant Meisner "was contacted in his capacity as Deputy Warden in 2009 as a result of the plaintiff's 25th medication-related complaint." Id. at 4. And he alleges that defendant Pollard "was formally contacted at least twice in 2012 in his capacity as Warden as a result of the plaintiff's 33rd and 42nd medication-related complaints." Id. The plaintiff also alleges that defendant Thurmer "was informed in 2009 in his capacity as Warden as a result of the plaintiff's 22nd medication-related complaint." Id.

Next, the plaintiff alleges that defendant Strahota,

> was formally apprised of the plaintiff's situation at least (8) times via the ICRS. In his capacity as the Security Director he was contacted (6) times between 2006 and 2009 and as the Deputy Warden he was contacted twice in 2012. These contacts were the result of the plaintiff's 3rd, 4th, 15th, 21st, 22nd, 25th, 33rd and 42nd complaints about not receiving his medication.

Id.

The plaintiff alleges that defendant Westra "was contacted at least (4) times between 2016 and 2017 as a result of the plaintiff's 76th, 84th, 86th and 87th medication-related complaints." Id.

The plaintiff states that each defendant was "personally notified of the systemic problem and despite being in a position to take remedial action they repeatedly failed to act, fully aware that the cycle would continue, in a display of deliberate indifference to the plaintiff's serious medical needs in violation of

5

the Eighth Amendment." Id. He sues each defendant in his or her individual capacity. Id. at 1-2.

The plaintiff requests declaratory relief as well as nominal, compensatory and punitive damages. Id. at 5.

C. The Court's Analysis

The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter and medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994). To state a claim under the Eighth Amendment, a plaintiff must allege that prison officials were "deliberately indifferent" to a substantial risk of serious harm to inmate health or safety. Id. at 834.

Prison officials act with deliberate indifference when they know of a substantial risk of serious harm and either act or fail to act in disregard of that risk. Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011). A medical need is considered sufficiently "serious" if the inmate's condition "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention." Id. (quoting Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)).

The plaintiff alleges the defendants' "continued practice of having correctional officers dispense controlled medication, maintain the logs and order refills" has caused him to miss thousands of doses of medication that he has been prescribed since 2004 to treat his insomnia, anxiety and depression. This alleged "abrupt unavailability" of the plaintiff's medication allegedly

6

Case 2:18-cv-01830-PP   Filed 07/13/20   Page 6 of 11   Document 9

the Eighth Amendment." Id. He sues each defendant in his or her individual capacity. Id. at 1-2.

The plaintiff requests declaratory relief as well as nominal, compensatory and punitive damages. Id. at 5.

C. The Court's Analysis

The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter and medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994). To state a claim under the Eighth Amendment, a plaintiff must allege that prison officials were "deliberately indifferent" to a substantial risk of serious harm to inmate health or safety. Id. at 834.

Prison officials act with deliberate indifference when they know of a substantial risk of serious harm and either act or fail to act in disregard of that risk. Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011). A medical need is considered sufficiently "serious" if the inmate's condition "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention." Id. (quoting Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)).

The plaintiff alleges the defendants' "continued practice of having correctional officers dispense controlled medication, maintain the logs and order refills" has caused him to miss thousands of doses of medication that he has been prescribed since 2004 to treat his insomnia, anxiety and depression. This alleged "abrupt unavailability" of the plaintiff's medication allegedly

caused him insomnia, migraines, severe nausea, disruption of well-being and mental health and the exacerbation of the plaintiff's underlying symptoms of depression, insomnia and anxiety.

The plaintiff has sufficiently alleged that he has suffered from a serious medical need because he alleges that he had pain in the form of migraines and that he had severe nausea. See Gutierrez v. Peters, 111 F.3d 1364, 1371 (7th Cir. 1371, 1373. Also, "the need for a mental illness to be treated could certainly be considered a serious medical need." Sanville v. McCaughtry, 266 F.3d 724, 734 (7th Cir. 2001).

The defendants' alleged lack of action regarding the policy that allegedly caused the abrupt unavailability of the plaintiff's medication could amount to deliberate indifference, if the defendants knew about the plaintiff's medical needs yet "turned a blind eye" to the policy that caused the unavailability of his medication. See Perez v. Fenoglio, 792 F.3d 768, 782 (7th Cir. 2015); Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001). The court cannot conclude, however, that the plaintiff alleges the defendants acted with deliberate indifference to his serious medical needs because the court cannot tell whether the defendants are responsible for the plaintiff missing thousands of doses of medications.

The plaintiff states that he missed the medications due to the defendants' continued practice of having unqualified and ill-trained correctional officers dispense controlled medication, maintain the logs and order refills. The court perceives him to allege that correctional officers somehow erred in dispensing

7

medication, maintaining the logs, and/or ordering refills, which caused the "abrupt unavailability" of the plaintiff's medication. He implies that the errors would not have occurred if *correctional officers*—as opposed to, perhaps, HSU staff?—had not been dispensing medication, maintaining the logs, and/or ordering refills. He also implies that in his nearly 100 medication-related complaints, the plaintiff notified each defendant that the correctional officers caused each abrupt unavailability and that changing the policy so that correctional officers did not perform these duties would fix the problem.

The court cannot make these leaps. While the plaintiff alleges that the defendants were repeatedly informed that their policy caused his missed medications, he has not provided enough information for the court to determine that he has alleged that the defendants' failure to respond by changing the policy amounted to deliberate indifference.

The court will give the plaintiff an opportunity to file an amended complaint clarifying his claim against the defendants. When writing his amended complaint, the plaintiff should be specific—which officers have been responsible for dispensing his medications? How frequently? How often do particular officers neglect to give him medications? What are the medications he does not receive? What does he do when he doesn't receive required medication—does he tell the dispensing officer? What makes him believe the officers are not well-trained? How does he know the officers maintain the medication logs? How has he notified the defendants of this issue—has he used the prison complaint system? How many complaints has he filed and when?

8

The plaintiff's amended complaint does not need to be long, or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did to violate the plaintiff's rights.

The court is enclosing a copy of its complaint form and instructions. The plaintiff should write the word "AMENDED" in front of the word "COMPLAINT" at the top of the first page, and then put the case number for this case—18-cv-1830—in the field for "Case Number." He must list all the defendants in the caption of the complaint. He must use the spaces on pages two and three to allege the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If the space is not enough, he may use up to five additional sheets of paper (putting page numbers on each additional page and double-spacing). The amended complaint takes the place of the prior complaint, and must be complete in itself. The plaintiff cannot simply say, "Look at my first complaint for further information." See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84, 133 F.3d 1054, 1056-57 (7th Cir. 1998).

If the plaintiff files the amended complaint by the deadline, the court will screen it under 28 U.S.C. §1915A.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

9

The court **ORDERS** that the plaintiff must file an amended complaint that complies with the instructions in this decision. The court **ORDERS** that the plaintiff shall file the amended complaint in time for the court to *receive* it by the end of the day on **August 14, 2020**. If the court does not receive an amended complaint complying with this order by the end of the day on August 14, 2020, the court will dismiss the case on the next business day with no further notice or hearing.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the $219.47 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court **ORDERS** that, under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. If the plaintiff is no longer

incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

The court includes with this order a copy of the guide entitled, "Answers to Prisoner Litigants' Common Questions" and a blank prisoner complaint form.

Dated in Milwaukee, Wisconsin this 13th day of July, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**