UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOSHUA HOWARD,

        Plaintiff,

  v.

        Case No. 18-cv-1830-pp

LINDA ALSUM-O'DONOVAN, *et al.*,

        Defendants.

---

**ORDER CONSTRUING MOTION FOR LEAVE TO AMEND COMPLAINT AS RENEWED MOTION TO RECONSIDER AND GRANTING MOTION (DKT. NO. 20), VACATING ORDER DISMISSING CASE (DKT. NO. 13) AND VACATING JUDGMENT (DKT. NO. 14), DIRECTING CLERK OF COURT TO DOCKET AMENDED COMPLAINT AND EXHIBITS (DKT. NOS. 20-1, 20-1) AND REQUIRING DEFENDANTS TO ANSWER OR OTHERWISE RESPOND**

---

Joshua Howard is an incarcerated person and a prolific *pro se* litigator in this district. In the past seven years, he has filed thirteen lawsuits. He filed the first of those lawsuits in June 2014 (Howard v. Koeller, *et al.*, Case No. 14-cv-667-NJ), six months before the undersigned was appointed to the district court. Of those fourteen cases, all but five[1] have been assigned to the undersigned, as a result of the Eastern District's rule that when a *pro se*

---

[1] The plaintiff filed four of the five cases before Judge Pepper was appointed to the district court (although one of those four was reassigned from Magistrate Judge Joseph to Judge Pepper upon her appointment as part of the redistribution of the court's case load. Howard v. Schrubbe, *et al.*, Case No. 14-cv-1157). One of the plaintiff's cases was reassigned from Judge Pepper to newly-appointed district court Judge Brett H. Ludwig as part of a further redistribution of the court's caseload. Howard v. Schrubbe, *et al.*, Case No. 15-cv-557. One of the plaintiff's cases was assigned to Magistrate Judge William E. Duffin; the court assumes that all parties consented to Judge Duffin resolving the case. The plaintiff subsequently asked to be voluntarily dismissed as a plaintiff in that case (which he'd filed with another incarcerated person). Lusk v. Arne, *et al.*, Case No. 19-cv-616.

1

incarcerated person has a case open and assigned to a judge, all of his subsequently-filed cases are assigned to that same judge.

On the one hand, this practice of assigning all the cases of a single, self-represented incarcerated plaintiff to the same judge helps the judge become somewhat familiar with the plaintiff's issues and concerns, and prevents the incarcerated person from "judge-shopping" when one judge rules in a way that the plaintiff does not like. On the other hand, judges in the Eastern District each have anywhere from 250-300 civil cases, and a separate caseload of criminal cases. The judges cannot remember every detail of every party's case, especially when that party has filed several cases.

The plaintiff, currently incarcerated at Green Bay Correctional Institution, filed this civil rights complaint under 42 U.S.C. §1983 on November 20, 2018, naming ten defendants and asserting that there had been hundreds of incidents in which he'd missed receiving the medication he needed for his depression, anxiety and insomnia. Dkt. No. 1. By that point, he had four pending cases which had been assigned to Judge Pepper; the earliest was filed September 29, 2014. The complaint in this case alleged that the plaintiff had filed many complaints related to this problem and asserted that all ten defendants were aware of it; it listed the number of times each defendant had been "contacted" or "apprised of the medication problem." Id. at 1-4. He asserted that the practice of having correctional officers hand out medication, keep medication logs and order refill medication was what caused him to miss so many doses. Id.

The court screened this complaint and concluded that it could not tell whether the defendants were the ones responsible for him missing hundreds of doses of medication. Dkt. No. 9 at 7. The court found that while the complaint implied that the fact that correctional officers were administering medications was the cause of the missed doses, and while it implied that the plaintiff had notified each defendant of that fact, the complaint did not provide enough information to sustain those implications. Id. at 7-8. The court gave the plaintiff a deadline of August 14, 2020 by which to amend his complaint to provide more specific allegations:

> When writing his amended complaint, the plaintiff should be specific—which officers have been responsible for dispensing his medications? How frequently? How often do particular officer neglect to give him medications? What are the medications he does not receive? What does he do when he doesn't receive required medication—does he tell the dispensing officer? What makes him believe the officers are not well-trained? How does he know the officers maintain medication logs? How has he notified the defendants of this issue—has he used the prison complaint system? How many complaints has he filed and when? The plaintiff's amended complaint does not need to be long, or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did to violate the plaintiff's rights.

Id. at 8-10. The plaintiff asked for an extension of time, dkt. no. 10; the court granted that request, extending the deadline to August 28, 2020, dkt. no. 11.

The plaintiff filed the amended complaint on August 24, 2020. Dkt. No. 12. The amended complaint specified that the defendants—supervisors, mostly—were deliberately indifferent "based on their continued use of correctional officers to distribute medication, maintain medication records and issue refill slips to [Health Services Unit], after it was well known to be a

3

deficient practice within the DOC in general and specifically at [Waupun]." Id. at 12. This complaint was much more detailed. It included a reference to a class action lawsuit that resulted in Taycheedah Correctional Institution being required to use trained medical personnel to administer medications. Id. at 7 (citing Flynn v. Doyle, 630 F. Supp. 2d 987 (E.D. Wis. 2009) (a class action in which Judge Rudolph T. Randa issued a preliminary injunction requiring medications to be distributed by trained medical staff with credentials equal to or greater than LPNs).

The court screened the amended complaint on December 14, 2020. Dkt. No. 13. The court began by noting that the amended complaint answered some of the questions the court had asked the plaintiff to answer. Id. at 13. The court found, however, that while the plaintiff said that he'd filed "medication-related" inmate complaints, he did not say what he complained about in those complaints. Id. at 14. He did not explain whether he had complained about a missed does or series of doses, whether he complained about withdrawal symptoms or explained whether he was suffering, whether he explained in the complaints that he believed the reason he was missing doses was because corrections officers (not medical staff) were distributing medication. Id. The court stated that it could not

> tell from the amended complaint whether the defendants—all prison administrators—knew about a constitutional deprivation. The most pertinent information the plaintiff provides is that he believes he missed over 4,200 doses and complaint about it nearly 100 times, but he did not complain about it to each defendant nearly 100 times. At most, each defendant had some role in reviewing one or more complaints from the plaintiff over several years. Without knowing what those complaints said, and whether each one was cumulative

4

> (identifying how many times total the plaintiff had missed medication doses and what symptoms he'd suffered as a result), there is no way to determine whether any defendant had reason to know that the plaintiff was missing medication as frequently and routinely as he alleges.

Id. at 13-14.

The court also noted that it appeared from the plaintiff's own pleadings that staff at Waupun—specifically, the inmate complaint examiners—had tried to address his concerns over the years, including with training, talking to officers who did not follow procedure and eventually changing the procedure. Id. at 14. Because the court concluded that the amended complaint suffered from a similar deficiency to the original complaint, the court dismissed the case. Id. at 15.

Just over three weeks later, the plaintiff filed a motion under Federal Rule of Civil Procedure 59(e) asking the court to alter or amend the judgment and let him proceed on his amended complaint. Dkt. No. 15. Although the court had dismissed the case, the plaintiff asked to "supplement" the amended complaint with his own declaration, which he believed would "sufficiently explain the scope of [the defendants'] involvement and knowledge and their failure to act." Id. at 1. The plaintiff also said that the "attached evidence" demonstrated that each of the defendants either had been instructed to correct the medication problems or had been personally involved in the decision-making process regarding his complaints. Id. at 2. The motion then went into detail about each defendant's alleged involvement in the medication issues.

The plaintiff attached to this motion a sixteen-page declaration (verified under 28 U.S.C. §1746), describing the dates on which he'd filed "medication complaints" and explaining how certain of the defendants had been involved with those complaints. Dkt. No. 16. The last paragraph of the declaration stated that "Exhibit 101" contained accurate information from the plaintiff's Inmate Complaint Review System records. Id. at 9, ¶37.

The court received the motion to alter or amend the judgment and the plaintiff's declaration on January 8, 2021. Six days later, the court received a letter from the plaintiff, indicating that the "Exhibit 101" he'd referenced would be coming later because he'd suffered a "user error" with the computer file and much of the exhibit had been erased. Dkt. No. 17. On January 19, 2021, the court received Exhibit 101. Dkt. No. 18. This exhibit lists each of the plaintiff's ICRS complaints by complaint number, describes the topic of each complaint (such as "medication was unavailable from 2.20 to 2.25.07"), describes the institution response to the complaint, lists the persons to whom the plaintiff sent the complaint and the date the complaint was sent to those persons. The document is eight pages long and chronicles complaints filed between September 2006 and August 2017. The exhibit documents that each of the defendants (except Westra, who is mentioned only once that the court could tell) was notified multiple times—either by the plaintiff himself, or by having the plaintiff's ICRS complaint forwarded by another person—of the plaintiff's complaints about missing doses of medication. Many of the institution responses indicate that the institution may have been trying to

address the plaintiff's concerns, and it is not clear from any of them that the plaintiff complained that he thought medical staff, not correctional staff, ought to be distributing the medications. But the document does indicate that all the defendants were aware that the plaintiff had filed multiple complaints about missing doses of medication.

The court denied the motion to alter or amend the judgment. Dkt. No. 19. It noted that the motion did not explain why the plaintiff had not provided sufficient detail in his original or his amended complaint, and stated that the plaintiff had not demonstrated that the court had committed a manifest error of law or fact in dismissing the case. Id. at 2-3.

Twelve days later, and almost four months after the court dismissed the case, the plaintiff filed a motion for leave to amend the complaint. Dkt. No. 20. The plaintiff explained that he had not sought leave to file an amended complaint, nor filed a proposed amended complaint, when he filed the motion to alter or amend the judgment because he had intended to *supplement* the amended complaint with his declaration and Exhibit 101; he stated that he thought those documents satisfied the court's request for information and thus that he was not required to seek leave to file yet another amended complaint. Id. at 2. He also stated that the reason he did not explain why he had not earlier supplemented the amended complaint was because he did not think it "was legally germane and was focused on providing more information." Id. He says that he believed that he had satisfied the notice pleading standard by stating that the defendants were

7

"aware of the constitutionally-infirm medication system and not having the will to stop using unqualified and ill-trained correctional officers, they simply ignored the plaintiff's repeated requests for help," along with his statement that each of the defendants had been personally notified of the alleged problem yet failed to take action. Id. at 2-3.

Finally, the plaintiff says he did not think it necessary to provide in-depth details in his complaint because he assumed that the court was familiar with the underlying facts of the case, "as they are identical to E.D. Case No. 15-cv-557, which was before the Court up until last December when it was transferred to another judge." Id. at 3. The plaintiff says that in that 2015 case, he had named the manager of the Health Services Unit, but during discovery learned that "several security staff were equally responsible for his treatment and rather than add several defendants late in the proceedings, he decided to just file a separate action." Id. at 3-4. He says that the original complaint in this case was "largely modeled on the 5-page amended complaint which this Court accepted in Case '557," and he argues that it is "only logical that the plaintiff would assume that a complaint relaying at least as much information would pass muster." Id. at 4.

The plaintiff argues that the court should give him leave to amend because at this point, he likely could not file a new lawsuit, given that he is seeking relief for conduct that occurred prior to 2015 (although he filed the lawsuit in 2018). Id. at 20. He attached to the motion a proposed amended complaint (Dkt. No. 20-1) and exhibits (Dkt. No. 20-2).

8

As the court has explained, the fact that the same judge usually is responsible for all of an incarcerated person's *pro se* cases does not mean that that judge remembers every detail of every one of those cases, particularly when the incarcerated person has filed numerous lawsuits, as the plaintiff has. The 2015 lawsuit, which the plaintiff assumed the court was familiar with, began as a nine-plaintiff, proposed class action lawsuit against multiple defendants, alleging everything from taking interest earned on inmate accounts without compensation to allowing overcrowding to failure to provide mental health treatment to deliberate indifference to failure to accommodate inmates with disabilities. Howard, *et al.* v. Walker, *et al.*, Case No. 15-cv-557 (E.D. Wis.), Dkt. No. 1. The case originally was assigned to Magistrate Judge Joseph, then was reassigned to Judge Rudolph T. Randa. It was Judge Randa who "screened" the second amended complaint, not Judge Pepper. Id. at Dkt. No. 38. The case was subsequently reassigned to Judge Pepper in August 2016, after Judge Randa became ill. While Judge Pepper ruled on many procedural motions over the next four years—motions for extensions of time, motions to strike, discovery motions—it was Judge Brett Ludwig, not Judge Pepper, who ruled on the substantive, renewed summary judgment motion. Id. at Dkt. No. 114. By that time, the case had evolved into a case with one plaintiff and three defendants, in which the plaintiff claimed that a security captain, a psychiatrist and the manager of Waupun's Health Services Unit violated his Eighth Amendment rights by, among other things, using corrections staff rather than health staff to dispense medications. Id. at

9

Dkt. No. 114, pages 1-2. Judge Ludwig has denied summary judgment as to the Health Services Unit manager and Judge Ludwig is in the process of recruiting a lawyer to represent the plaintiff. Id. at Dkt. No. 114, Dkt. No. 124.

The plaintiff's assumption that Judge Pepper would have remembered the details of the 2015 case when she was screening his claims in the 2018 case is understandable, but it does not account for the fact that many of Judge Pepper's rulings did not require her to know all the plaintiff's allegations. It also is not accurate in terms of how lawsuits work. A plaintiff must allege sufficient facts in every lawsuit he files to support his claims; the complaint in each case must stand alone, and cannot depend on facts alleged, and claims made, in other lawsuits. Even if Judge Pepper had recalled all the details of the claims from the plaintiff's 2015 case when screening the 2018 case, the *defendants* in this case are not the defendants in the 2015 case. A complaint must not only advise the court of the basis for the claims within it, but also must be sufficient to give the defendants notice of the claims the plaintiff is making against them.

Nor is a motion for leave to file an amended complaint appropriate in a closed case. Once the court enters judgment, a plaintiff may amend his complaint only if he convinces the court to vacate or set aside a judgment under Federal Rule of Civil Procedure 59(e) or 60(b). See Foster v. DeLuca, 545 F.3d 582, 583 (7th Cir. 2008); Dubicz v. Commonwealth Edison Co., 377 F.3d 787, 790 (7th Cir. 2004).

10

The court previously denied the plaintiff's motion to alter or amend the judgment under Rule 59(e). The court found that the plaintiff had not demonstrated that the court committed a manifest error of law or fact in dismissing the case for failure to state a claim. The plaintiff still has not convinced the court that it committed a manifest error of law or fact, based on the facts the court had before it in December 2020 when it dismissed the complaint.

Since then, the plaintiff has provided the court with more facts and more details about his claims—facts and details that render the complaint sufficient to state a claim. He has had four opportunities to state sufficient facts—more opportunities than most plaintiffs receive. But the court concludes that the plaintiff has now provided the court with sufficient facts to state a claim against the ten defendants he has sued.

The court is going to take the unusual step of vacating its order dismissing the case (and vacating the judgment and the strike the court ordered assessed against the plaintiff). The court will direct the Clerk of Court to docket the amended complaint at Dkt. No. 20-1, and the exhibits at Dkt. No. 20-2, as the operative complaint. The court will order these documents served on the ten defendants and require them to answer or otherwise respond to the complaint.

The court **CONSTRUES** the plaintiff's Motion for Leave to File Amended Complaint as a motion to reconsider, and **GRANTS** that motion. Dkt. No. 20.

The court **ORDERS** that its December 14, 2020 order dismissing the

case is **VACATED**. Dkt. No. 13.

The court **ORDERS** that the December 14, 2020 judgment of dismissal is **VACATED**. Dkt. No. 14.

The court **ORDERS** that the Clerk of Court reopen the case.

The court **ORDERS** that the Clerk of Court document that the strike assessed against the plaintiff in the December 14, 2020 order of dismissal is **REMOVED**.

The court **ORDERS** that the Clerk of Court docket the proposed amended complaint at Dkt. No. 20-1 and the exhibits at Dkt. No. 20-2 as the second amended complaint, and **ORDERS** that the second amended complaint is the operative complaint.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Linda Alsum-O'Donovan, William J. Bauer, Scott Cooper, Brian Foster, Warden Michael Meisner, Anthony Meli, William J. Pollard, Donald Strahota, Michael Thurmer and Jeremy Westra. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within 60 days.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. It is the plaintiff's responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice, as well as in preventing the plaintiff from receiving important documents.

Dated in Milwaukee, Wisconsin this 18th day of May, 2021.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**